UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 12-11045-WRS |
| | Chapter 13 |
| ERIC ALLEN McLEAN | |
| DEBORAH DIANNE McLEAN, | |
|     Debtors | |
| ERIC ALLEN McLEAN and | |
| DEBORAH DIANNE McLEAN, | |
|     Plaintiffs | Adv. Pro. No. 13-1008-WRS |
| v. | |
| GREEN POINT CREDIT LLC and | |
| GREEN TREE SERVICING LLC, | |
|     Defendants | |

## MEMORANDUM

This Adversary Proceeding came before the Court for trial on October 15, 2013, with the Plaintiffs seeking relief on a claim for a violation of 11 U.S.C. § 524. For the reasons set forth below, the Court finds in favor of the Plaintiffs.

## I. FACTS

**Debtors' Bankruptcy History**

The Plaintiffs, Eric and Deborah McLean, filed a voluntary Chapter 13 petition on June 14, 2006, which was designated as case number 06-10541. The 2006 petition listed Green Tree among the unsecured creditors for a deficiency balance of $11,018.00 owed on a sales contract for a mobile home. The McLeans' Chapter 13 case was ultimately converted to a Chapter 7 on

September 5, 2008, and on January 6, 2009, the McLeans received a Discharge Order, which was sent to all creditors.

The McLeans filed their second Chapter 13 on June 18, 2012, designated as case number 12-11045. On August 16, 2012, Green Tree filed proof of claim 13-1 in the current bankruptcy, in the amount of $11,018.03. This proof of claim sought payment for the same deficiency balance owed on a mobile home sales contract that was the subject of Green Tree's claim in the 2006 bankruptcy. The McLeans filed an objection to the Green Tree claim on December 13, 2012, arguing that the debt was discharged in their prior Chapter 7 bankruptcy. (Case No. 12-11045, Doc. 29). Green Tree moved to withdraw the claim on January 11, 2013, (Id., Doc. 37), and the Court sustained the McLeans' objection on January 16, 2013, (Id., Doc. 40).

**Adversary Proceeding for Violation of the Discharge Injunction**

On January 7, 2013, the Plaintiffs initiated this adversary proceeding, seeking damages for Green Tree's alleged violation of the discharge injunction from the 2006 case in the form of actual damages for emotional distress, legal fees, and punitive damages. (Doc. 1). A trial was held on October 15, 2013, and the court heard testimony from Mr. and Mrs. McLean, along with a litigation representative of Green Tree, Mr. Pete Dalpiaz.

Mr. McLean is a disabled veteran suffering from post-traumatic stress disorder related to an injury he sustained during his military service. Mr. McLean's PTSD manifests itself in the form of severe anxiety and frequent nightmares that occur two to three times per week. To treat this, Mr. McLean is required to take a number of medications, including lithium, ambien, klonopin, and pazosin. Because of his anxiety, Mr. McLean testified that he cannot go into

public places without medication, and often spends time at home secluded in his room away from his family. Mr. McLean suffers from increased stress and anxiety during what has been termed his "anniversary period," which marks the anniversary of his trauma. During this anniversary period, which occurs for Mr. McLean typically in the fall and early winter, he is increasingly fragile.

At trial, Mr. and Mrs. McLean testified to the emotional stress they underwent as a result of Green Tree's claim. Mr. McLean testified that after the filing of the Green Tree claim in the present bankruptcy, he received a notice from the Bankruptcy Court clerk's office informing him that his monthly chapter 13 plan payments would be increased. Mr. McLean testified that this increase in payments would almost double the monthly amount he was required to pay, which would make him unable to complete the chapter 13 plan, and expose his family to creditors and the loss of their home and possessions. The stress caused by this exacerbated his PTSD, disrupting his sleep with more frequent nightmares and night sweats. To make matters worse, Mr. and Mrs. McLean testified that this additional stress occurred during Mr. McLean's PTSD anniversary period. Mr. McLean testified to being increasingly anxious and withdrawn, and as a result his medication usage had to be increased. Mr. McLean testified that the heightened symptoms from this stress persisted for roughly three months. Mrs. McLean also testified to the stress her husband underwent, as well as the stress she incurred due to worrying about her husband's mental state.

Green Tree did not offer any testimony or evidence disputing that they had notice of the 2006 discharge order. Green Tree's representative, Mr. Dalpiaz, instead testified that Green Tree was unsure how the filing of the 2012 claim occurred in light of the existing discharge

injunction. Dalpiaz testified to Green Tree's internal procedures for complying with discharge injunctions, as well as their procedures for initiating debt collection upon the filing of a bankruptcy petition. He further testified that although the McLeans' internal file contained some notations that might have flagged it as a discharged debt, recent software changes had made the notations unreadable.

## II. LAW

**Section 524 and Violations of the Discharge Injunction**

Section 524 of the Bankruptcy Code provides protection to a debtor upon conclusion of the bankruptcy proceedings, providing a fresh start by prohibiting the collection of discharged debts. The section "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Upon the debtor's discharge, the discharge injunction replaces the automatic stay, and operates similarly. In re Matthews, 184 B.R. 594, 599 (Bankr. S.D. Ala. 1995); see also In re Diaz, 647 F.3d 1073 (11th Cir. 2011) (noting that "[t]he discharge injunction that arises upon the entry of a discharge order is perhaps the most important feature of the discharge.").

A willful violation of the discharge injunction is an act of contempt, and is a sanctionable offense that "'authorizes a court to hold a violating creditor in contempt and award attorneys fees.'" Ashley v. Univ. of Ala. Health Serv. Found., PC, 2012 WL 3962669, *2 (Bankr. N.D. Ala.) (quoting Matthews, 184 B.R. at 599); see also Alderwoods Grp, Inc. v. I.R.S., 92 F.3d 958, 968 (11th Cir. 2012). The inquiry in a contempt analysis is not based on a subjective belief or intent in one's compliance with the discharge order, but instead looks to whether the contemnor's

4

conduct complied with the order. In re Hardy, 97 F.3d 1384, 1390 (11th Cir. 1996) (quoting Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990)). In Hardy, the Eleventh Circuit adopted a two-part test for determining willfulness in discharge injunction violations, finding the actions willful if the creditor: "'(1) knew that the [discharge injunction] was invoked and (2) intended the actions which violated the [injunction].'" Id. (quoting Jove, 92 F.3d at 1555). Ultimately, "[i]f the court finds that the creditor received notice of the discharge in bankruptcy, then the debtor will have to prove only that the creditor intended that actions which violated the injunction." Faust v. Texaco Ref. and Mktg, Inc., 270 B.R. 310, 315 (Bankr. M.D. Ga. 1998).

**Green Tree's Violation of the Discharge Injunction**

Applying the Hardy test, Green Tree violated the discharge injunction by filing a proof of claim in the Debtors' present bankruptcy while having notice of the debt's discharge in the 2006 bankruptcy. There is no dispute in this case as to whether Green Tree had knowledge of the Debtors' existing discharge injunction. Green Tree, in its briefing on their motion for summary judgment, admitted knowledge of the Chapter 7 discharge. (Doc. 19, p. 3). At trial, Green Tree maintained that they had notice of the discharge injunction. Further, there is no real dispute on the part of Green Tree that they intended the actions which violated the injunction - here, the filing of the claim in the present case. Rather, Green Tree argued that the attempt to collect the debt through the filing of the 2012 claim was not enough to violate § 524. Under the Hardy test, however, Green Tree is incorrect. That Green Tree admits knowledge of the discharge injunction, and further admits that they knowingly filed the 2012 proof of claim is enough to find a willful violation of § 524.

**Sanctions**

Having established that Green Tree willfully violated the discharge injunction, the Court must determine the appropriate sanctions. Imposition of contempt sanctions are designed to "(1) compensate the complainant for losses and expenses it incurred because of the contemptuous act, and (2) coerce the contemnor into complying with the court order." Faust, 270 B.R. at 316. Under Eleventh Circuit precedent, contempt sanctions may be imposed in a coercive manner, and actual damages and attorney fees may be awarded. Hardy, 97 F.3d at 1390 (quoting Jove, 92 F.3d at 1557-58). The court may sanction both through its inherent contempt powers of § 524, and its statutory contempt powers of § 105 of the Code. Hardy, 97 F.3d at 1388-1390. The sanction coming under the court's inherent contempt power is proper only when the conduct violating the injunction is in bad faith. Id. at 1389 n. 3. Alternatively, a sanction under the court's statutory contempt power of § 105 is permissible if it can be shown that the creditor willfully violated the discharge injunction. Id. at 1390. The Eleventh Circuit has held that a court sanctioning a creditor for liability under § 524(a)(2) should exercise its statutory contempt powers under § 105. Hardy, 77 F.3d at 1389.

The Debtors seek damages for the emotional distress caused by the violation of the injunction, along with attorney fees. Based upon the testimony at trial, the Court finds that Green Tree's violation of the discharge injunction caused emotional distress to the Debtors, and an award of actual damages is appropriate. Claims of emotional distress are actual damages. In re Wassem, 456 B.R. 566, 572 (Bankr. M.D. Fla. 2009). The testimony of the McLeans is sufficient for this court to make a finding of emotional distress, as a debtor is not required to present corroborating medical evidence. Id. (citing In re Dawson, 390 F.3d 1139, 1150-1151 (3d

6

Cir. 2004)). The Court found the testimony of the McLeans to be credible and demonstrated evidence of the considerable strain this ordeal placed on the Plaintiffs. Further, attorney fees are also an appropriate award of actual damages in this case. As a result, the Plaintiffs are entitled to an award of actual damages for both emotional distress in the amount of $25,000.00 and attorney fees in an amount to be determined.

Additionally, the Court may impose monetary sanctions as a coercive measure to ensure the creditor's future compliance with the discharge injunction. Sanctions to coerce a creditor to cease violating the discharge injunction are an appropriate use of contempt sanctions. Jove, 92 F.3d at 1557-58. Such a sanction may be particularly necessary in a case where a creditor has displayed inadequate procedures in dealing with stopping debt collection after a discharge is entered. "'Creditors are obligated to maintain procedures to ensure that they do not violate section 524, and may be held liable for damages and attorney's fees if they do not.'" Faust, 270 B.R. at 317 (quoting 4 Collier on Bankruptcy ¶ 524.02[2][b]) .

Coercive sanctions are appropriate in this case. During the trial, Green Tree's representative, Mr. Dalpiaz, testified to the internal procedures used by Green Tree in both collecting debts and stopping collection efforts. According to Mr. Dalpiaz, Green Tree is able to find debtors who have filed bankruptcy by running a daily "scrub" of social security numbers. That is, Green Tree is capable of electronically scanning the daily bankruptcy filings for a social security number matching that of a debtor owing them money, allowing them to file claims in those cases. On the other hand, when Green Tree needs to stop collection efforts due to a discharge injunction, the procedures are more obtuse. Dalpiaz testified that upon receipt of a discharge injunction, Green Tree images the document, enters a note on the debtor's account, and

7

gives the account a status code that reflects the discharge injunction. The procedure for stopping debt collection is less technologically efficient. For example, Dalpiaz testified that the discharge order for the McLeans was never imaged into their file, and the file was lacking any clear notation that a discharge had been entered. He stated that while there were notations on the file, they were not readable and he could not ascertain the status of the file. He attributed this to an internal software change, which as a result made notes from previous versions of software non-translatable and non-readable. Mr. Dalpiaz testified that he was not aware of anyone at Green Tree who would be able to interpret the McLean file in its current form. It is noteworthy to the Court that an outfit like Green Tree is capable of being incredibly technologically savvy with respect to debt collection while being seemingly hamstrung by technological hurdles when it comes to halting that debt collection. Coercive sanctions are appropriate here to encourage Green Tree take a fresh look at their internal procedures to ensure that they are designed to prevent violations of § 524. Such sanctions are awarded in the amount of $50,000.00.

### III. CONCLUSION

Based upon the record and the testimony heard at trial, the Court finds that judgment should be entered in favor of the Plaintiffs. The Plaintiffs have met their burden in proving that Green Tree willfully violated the discharge injunction of § 524. It is undisputed that Green Tree received notice and had knowledge of the discharge order resulting from the 2006 case. There is also no real dispute over whether Green Tree intended the actions that violated the injunction, the filing of the proof of claim in the 2012 case. The Plaintiffs provided sufficient testimony at trial demonstrating that they are entitled to an award of actual damages for emotional distress and attorney fees. Further, the Court heard testimony on Green Tree's internal procedures

8

surrounding compliance with § 524, and believes sanctions are appropriate to ensure future compliance with the discharge injunction.

The Court will, by way of a separate order, require the Plaintiffs' counsel to file an affidavit setting out his attorney fees. The Court will enter a final judgment after it determines the amount of fees to be awarded.

Done this 8th day of November, 2013.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Nicholas H. Wooten, Attorney for Plaintiffs
   Paul J. Spina III, Attorney for Defendants