IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ERIC ALLEN McLEAN and DEBORAH DIANNE McLEAN, | ) ) ) | |
| Plaintiffs-Appellees, | ) ) ) | |
| v. | ) ) | CASE NO. 1:13-CV-925-WKW |
| GREENPOINT CREDIT LLC and GREEN TREE SERVICING, LLC, | ) ) ) ) | |
| Defendants-Appellants. | ) | |

## MEMORANDUM OPINION

Greenpoint Credit LLC and Green Tree Servicing, LLC ("Green Tree") appeal the memorandum and order (Doc. #2-7) of the United States Bankruptcy Court for the Middle District of Alabama in an Adversary Proceeding (No. 13-1008). The Bankruptcy Court found in favor of the plaintiffs, Eric Allen and Deborah Dianne McLean ("the McLeans"). Specifically, the Bankruptcy Court found that Green Tree had willfully violated the discharge injunction in the McLeans' earlier bankruptcy proceeding. It awarded actual damages in the amount of $25,000.00, attorney's fees (that, according to the parties' briefs, were later determined to be in the amount of $18,355.16), and a sanction in the amount of $50,000.00. For the reasons to follow, the Bankruptcy Court's order is due to be affirmed.

# I.  JURISDICTION AND VENUE

This court has jurisdiction to hear appeals from orders of the Bankruptcy Court.  28 U.S.C. § 158(a).  Venue is proper because an appeal "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." *Id*.

# II.  STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its legal conclusions *de novo*.  *Educ. Credit Mgmt. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1324 (11th Cir. 2007).  A finding of fact "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (citation, internal quotation marks, and alterations omitted).

# III.  BACKGROUND

The parties do not dispute the Bankruptcy Court's findings of facts or the procedural posture this case.  They are briefly summarized here and discussed where necessary in the opinion.

The McLeans filed a voluntary Chapter 13 petition in 2006.  Green Tree was an unsecured creditor for a deficiency balance of $11,018.00 owed on a sales

contract for a mobile home.  The Chapter 13 case was ultimately converted to a Chapter 7.  The McCleans received a Discharge Order on January 6, 2009, and the Order t was sent to all creditors, including Green Tree.  The McLeans filed a second Chapter 13 on June 18, 2012.  On August 16, 2012, Green Tree filed a proof of claim in the 2012 bankruptcy seeking payment for the same deficiency balance owed on the mobile home sales contract that was the subject of Green Tree's claim in the 2006 bankruptcy.  Green Tree took no further action with respect to the discharged debt after filing the proof of claim.  The McLeans filed an objection to the Green Tree claim on December 13, 2012, due to the previous discharge of the debt. They initiated the adversary proceeding that is the basis of this appeal on January 7, 2013, seeking actual damages for emotional distress, legal fees, and punitive damages.  Green Tree then moved to withdraw the claim on January 11, 2013.   The Bankruptcy Court sustained the McLean's objection on January 16, 2013.

The Bankruptcy Court held the trial in the adversary proceeding on October 15, 2013, and heard testimony from the McLeans and Mr. Dalpiaz, a representative of Green Tree.  Mr. McLean testified that he is a disabled veteran with post-traumatic stress disorder ("PTSD") related to an injury sustained during his military service.  His PTSD symptoms are treated with medication, but they worsen during what he calls his "anniversary period" in the fall and early winter of

3

each year.  After Green Tree filed its claim on the discharged debt in the current

bankruptcy, Mr. McLean received notice from the Bankruptcy Court's clerk's

office, who informed him that his monthly payment under the chapter 13 plan

would increase.  Mr. McLean testified that the monthly payment would nearly

double, meaning it "would make him unable to complete the chapter 13 plan, and

expose his family to creditors and the loss of their home and possessions." (Doc.

#2-7, at 3.)  This realization caused stress that exacerbated his symptoms for a few

months.  Mrs. McLean also testified about her husband's symptoms and the stress

she incurred due to worrying about her husband's mental state.

The Green Tree representative testified that Green Tree had notice of the

Discharge Order in the 2006 bankruptcy.  The Bankruptcy Court found that:

> Green Tree was unsure how the filing of the 2012 claim occurred in
> light of the existing discharge injunction. Dalpiaz testified to Green
> Tree's internal procedures for complying with discharge injunctions,
> as well as their procedures for initiating debt collection upon the filing
> of a bankruptcy petition. He further testified that although the
> McLeans' internal file contained some notations that might have
> flagged it as a discharged debt, recent software changes had made the
> notations unreadable.

(Doc. #2-7, at 3-4.) Green Tree emphasizes in briefing that filing the claim in 2012

was a computer error.

4

# IV.  DISCUSSION

Green Tree raises nine issues, but the gist of Green Tree's appeal is a complete denial of liability and damages.  The McLeans respond to each issue. The court addresses the main arguments below.

## A.  <u>Willfully Filing a Proof of Claim Violates the Discharge Injunction.</u>

### 1.  *Filing a proof of claim is an act to collect.*

Green Tree asserts that, as a matter of law, the mere filing of the proof of claim is not an act that would violate the discharge injunction.  Green Tree's position, however, is not supported by the express language of section 524(a)(2), its legislative history, or analogous case law.

The court first examines the statutory language of the discharge injunction. A discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor."  11 U.S.C. § 524(a)(2). This discharge injunction is a permanent injunction against the enforcement of all discharged debts.  *United States v. White*, 466 F.3d 1241, 1246 (11th Cir. 2006). The plain language of section 524(a)(2) is expansive.  It clearly prohibits all acts, whether they involve a legal proceeding or not, to get the debt that was discharged in bankruptcy from the debtors.

5

To the extent the section 542(a)(2)'s language is ambiguous, the legislative history confirms the court's interpretation of the language of the discharge injunction: "The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts.  This paragraph has been expanded … and is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it.  In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that." H.R. Rep. 95-595, at 365-366 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6321-22.  Congress recognized that, to ensure a fresh start, bankruptcy debtors must be protected from all devices conjured up by creditors to collect on discharged debts. *See Hardy v. IRS (In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir. 1996). The discharge injunction was intended to prevent any act or attempt to collect from the debtors.

Green Tree contends that filing a proof of claim is not the equivalent of initiating a collection action or even attempting to collect from the debtors.  To support its position, Green Tree relies on *Crawford v. LVNV Funding*, 2013 WL 1947616 at *2 (M.D. Ala. May 9, 2013), in which this court distinguished "filing a proof of claim" from "attempting to collect a debt" in the context of the Fair Debt Collection Practices Act (FDCPA).  Even if the analysis applied outside the FDCPA context, this court's decision was recently vacated and remanded on

appeal, *see Crawford v. LVNV Funding, LLC*, __ F.3d __, 2014 WL 3361226 (11th Cir. July 10, 2014). In *Crawford*, the Eleventh Circuit interpreted the language of the FDCPA and concluded that the "filing of the proof of claim fell well within the ambit of a 'representation' or 'mean' used in 'connection with the collection of any debt,'" and "[i]t was an effort 'to obtain payment' of [the debtor's] debt 'by legal proceeding.'" *Crawford*, 2014 WL 3361226, at *4-5 (relying on *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995), for a definition of "to collect a debt"). The Eleventh Circuit further concluded that "[f]iling a proof of claim is the first step in collecting a debt in bankruptcy and is, at the very least, an 'indirect' means of collecting a debt." *Id*. at *5; *see also Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1091 (8th Cir. 2007) (stating that "[w]hen a creditor files a proof of claim before the bankruptcy court, this amounts to a civil action to collect the debt."); *Coxson v. Commonwealth Mortgage Co. of Am., L.P.* (*In re Coxson*), 43 F.3d 189, 193-94 (5th Cir. 1995) (agreeing with district court that "filing a proof of claim is 'an action to collect the debt'"). *Crawford* fails to support Green Tree's interpretation of section 524(a)(2), and it resolves the issue in this case in favor of the McLeans. If filing a proof of claim is a means of collecting a debt under the FDCPA, then it also is an act or attempt to collect a debt under the bankruptcy code's discharge injunction.

The plain language of the discharge injunction, its legislative history, and analogous case law support the conclusion that filing a proof of claim in a bankruptcy action is an act to collect on a debt that could be a violation of the discharge injunction.  Because the proof of claim is for a debt that was discharged in the McLeans' previous bankruptcy, Green Tree has violated the discharge injunction and may be held liable if such violation was willful.

### 2.     *Mistakes do not negate a willful violation.*

The violation of the discharge injunction may subject Green Tree to liability for contempt if the violation was willful.  Green Tree argues that it did not willfully violate the injunction, as filing the proof of claim was a mistake by its computer program.  The McLeans argue that Green Tree has admitted a willful violation.

Section 524(a)(2) does not expressly provide for monetary relief upon a violation of the discharge injunction; however, courts are authorized to hold a violating creditor in contempt and to award monetary and other forms of relief pursuant to contempt powers found in 11 U.S.C. § 105(a).  *Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996); *In re Ashly*, 2012 WL 3962669 (Bankr. N.D. Ala. Sept. 6, 2012).  A creditor may be liable for contempt only if it willfully violated the discharge injunction.  *Hardy*, 97 F.3d at 1390.  A creditor acts willfully in this

context if it (1) had knowledge of the discharge injunction; and (2) intended the actions that violated the injunction. *See id*.

There is no factual dispute regarding Green Tree's knowledge of the discharge injunction or its intent to file the proof of claim in the 2012 bankruptcy. These facts are sufficient to conclude that Green Tree willfully violated the discharge injunction, which is why the McLeans assert that Green Tree has admitted the willful violation. Green Tree has admitted the facts, but it argues that its computer system mistakenly failed to identify the notation of discharge on the McLeans's account, that it did not intend to violate the injunction, and that its behavior did not constitute "multiple extreme and egregious attempts by the creditors to collect their debts outside of the bankruptcy system." (*Appellant's Brief* at 34.) However, "the subjective beliefs or intent of the alleged contemnors in complying with the [discharge injunction]" is not relevant to the willfulness determination. *Hardy*, 97 F.3d at 1389. Also irrelevant to the willfulness determination are the number and egregiousness of the creditor's violations and the mechanisms by which violations are made. Courts regularly reject creditors' defenses of mistakes, computer problems, and other showings of alleged good faith when assessing the willfulness of violations of the automatic stay or discharge injunction. *See, e.g., Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1556 (11th Cir. 1996) ("We are not persuaded by IRS's attempts to avoid

9

responsibility for its conduct by blaming its computer system for not properly 'freezing' collection activities and blaming Jove for not calling IRS."); *see also Vazquez v. Sears, Roebuck & Co. (In re Vazquez)*, 221 B.R. 222, 228 (Bankr. N.D. Ill. 1998) (rejecting the violation was merely a computer mistake and stating that creditor's size and complexity did not excuse its disregard of the discharge injunction); *Poole v. U.B. Vehicle Leasing, Inc.* (*In re Poole)*, 242 B.R. 104, 110 (Bankr. N.D. Ga. 1999) (finding conduct intentional even though creditor mistakenly failed to properly note the bankruptcy filing in their records); *C & W Asset Acquisition, LLC v. Feagins* (*In re Feagins)*, 439 B.R. 165, 176 (Bankr. D. Haw. 2010) (finding willful violation even though creditor had mistaken belief about the legal status of the discharged debt); *McCormack v. Federal Home Loan Mortg. Corp.* (*In re McCormack)*, 203 B.R. 521, 524-25 (Bankr. D.N.H. 1996) (categorically rejecting mortgage servicer's "'computer did it' defense" and finding that such large institutions have a duty to ensure its computer programming is proper). The court concludes that Green Tree cannot rely on their computer problems as a defense to contempt. Green Tree willfully violated the discharge injunction.

### 3.    *Res judicata argument fails.*

Green Tree argues that the confirmation of the debtors' chapter 13 plan barred the debtors' objection to Green Tree's proof of claim and the litigation of

their claims against Green Tree in the adversary proceeding. A confirmed plan is intended to be final and binding. 11 U.S.C. § 1327. However, the bankruptcy court is authorized not only to modify a plan of confirmation pursuant to section 1329, but also to disallow a claim after the parties have litigated the issues pursuant to section 502. *Sys. & Servs. Techs., Inc. v. Davis (In re Davis)*, 314 F.3d 567, 570 (11th Cir. 2002). Therefore, the res judicata effect of the plan of confirmation is not absolute. The McLeans' objection to Green Tree's claim and related adversary proceeding are not barred by the confirmation of the plan.

**B.** **Awards of Damages Are Not Erroneous.**

      **1.** *Monetary relief is authorized by § 105.*

Green Tree makes a global challenge to the damages awards, arguing that actual damages, the coercive sanction, and attorney's fees were improperly awarded. This argument ignores the plain language of section 105, which authorizes the bankruptcy court to "issue *any* order, process, or judgment that is necessary or appropriate to carry out the provisions" of the bankruptcy code. 11 U.S.C. § 105 (emphasis added). This section is construed as a statutory contempt power, in which the bankruptcy court has the broad discretionary authority to remedy, *inter alia*, violations of the discharge injunction. *Hardy*, 97 F.3d at 1389-90. The remedial orders may be "'injunctive, compensative or punitive,' [and] 'monetary and other forms of relief'" are not limited so long as the ordered

sanction is necessary or appropriate to carry out the provisions of the bankruptcy code. *Id., quoting Jove Eng'g*, 92 F.3d at 1553-54.  Therefore, the monetary relief awarded in this case is authorized by section 105.

### 2. *Emotional damages are proper.*

Green Tree argues that the bankruptcy court should not have awarded emotional distress damages because the circumstances surrounding the violation of the discharge injunction made it obvious that a reasonable person would not suffer significant emotional harm.  The McLeans counter that Green Tree has misstated the standard, and the court agrees.

There appears to be no Eleventh Circuit authority on the proper standard to award damages for emotional distress caused by a willful violation of the discharge injunction.  Nonetheless, the standard adopted by the bankruptcy court is sound. *See In re Wassem*, 456 B.R. 566, 572 (Bankr. M.D. Fla. 2009) (adopting standard for emotional distress damages in the context of violations of the automatic stay as set forth in *Dawson v. Washington Mutual Bank, F.A. (In re Dawson)*, 390 F.3d 1139 (9th Cir. 2004)).  Under *Dawson*'s standard, the court affirms the award of actual damages.

Claims of emotional distress are actual damages, and pecuniary loss is not a prerequisite to the award.  *In re Wassem*, 456 B.R. at 572; *Dawson*, 390 F.3d at 1148-49.  Damages for emotional distress are proper where the debtor clearly

establishes that he or she suffered significant harm and demonstrates a causal connection between that significant harm and the willful violation of the discharge injunction.  *Dawson*, 390 F.3d at 1149.   Emotional harm must be significant; fleeting or trivial anxiety or distress is not sufficient.  *Id*.  There are several ways a debtor can clearly establish significant emotional harm, including but not limited to offering corroborating medical evidence, offering corroborating non-expert testimony, showing the violator engaged in egregious conduct, or testifying (without corroboration) about circumstances in which a reasonable person would obviously suffer significant emotional harm.  *Id*. at 1149-50.

Mr. and Mrs. McLean testified about the increased stress and anxiety suffered they each suffered and suffered by the other spouse after Green Tree's violative filing.  Mr. McLean would have suffered some level of stress and anxiety due to his PTSD and the anniversary of his injury, but Green Tree's filing was found to have exacerbated the symptoms, resulting in more frequent nightmares and night sweats, increased anxiety and withdrawal, and increased usage of medication. The testimony of the McLeans, which the Bankruptcy Court found credible and Green Tree does not dispute, is "corroborating non-expert testimony" sufficient to clearly establish significant emotional harm.  The McLeans are not required to meet a "reasonable person" standard, as suggested by Green Tree. Moreover, their testimony established the causal connection between significant

13

emotional harm and Green Tree's action. Following Green Tree's filing, Mr. McLean was told that their monthly payments under the chapter 13 payment plan would increase, that it "would almost double the monthly amount he was required to pay, which would make him unable to complete the chapter 13 plan, and expose his family to creditors and the loss of their home and possessions." (Doc. #2-7, at 3.) The McLeans' emotional harm naturally and directly followed Green Tree's filing of a proof of claim on a discharged debt, and it is a reasonably foreseeable result in a chapter 13 bankruptcy.

### 3. *The $50,000 sanction is warranted.*

Green Tree claims that the $50,000 coercive sanction imposed by the bankruptcy court was unwarranted and impermissibly punitive. The McLeans argue that the sanction is punitive but proper. Although the labels are nearly as confusing as the law on this issue, *see generally Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994), the court concludes that the language of § 105 does not prohibit the Bankruptcy Court from imposing an order awarding sanctions to influence parties' future behavior, regardless of whether that sanction is labeled coercive or punitive. The court further concludes that the $50,000 sanction ordered in this case is warranted.

### a.    Coercive sanctions

The Bankruptcy Court considered the monetary sanction to be coercive. (Doc. #2-7, at 7.)   Based on the testimony of Green Tree's representative, the Bankruptcy Court described in detail the electronic procedures used by Green Tree to identify debtors' bankruptcy filings and discharges and found the procedures to avoid a violation of the discharge injunction to be completely lacking:

> It is noteworthy to the Court that an outfit like Green Tree is capable of being incredibly technologically savvy with respect to debt collection while being seemingly hamstrung by technological hurdles when it comes to halting the debt collection. Coercive sanctions are appropriate here to encourage Green Tree to take a fresh look at their internal procedures to ensure that they are designed to prevent violations of § 524. Such sanctions are awarded in the amount of $50,000.00.

(Doc. #2-7, at 8.)   Green Tree argues that, without an opportunity to purge its contempt, the sanction is impermissibly punitive.   Courts have held that a fixed monetary sanction in a contempt action does not have a coercive effect.   *Bagwell*, 512 U.S. at 829-30; *Jove Eng'g*, 92 F.3d at 1557-59.   To coerce compliance with an affirmative act mandated by the court, a per diem monetary penalty would have to be imposed.   According to this theory, the contemnor could then avoid the penalty at any time by complying with the court order.

The rationale in these cases is somewhat problematic, though.   The Supreme Court in *Bagwell* discussed the confusion in the case law, regularly noted by legal scholars, over the differences between coercive sanctions (civil contempt) and

15

punitive sanctions (criminal contempt), the purposes of those sanctions, and the process that is due to contemnors before sanctions are imposed. *Bagwell*, 512 U.S. at 826-29, 827 n.3.  The confusion is heightened by the fact that contempt in this case occurred in the context of a discharge injunction violation, in which debtors do not have a statutory cause of action with explicit damages, as they do when the § 362 automatic stay is violated.  To provide a similar remedy, however, courts have construed § 105 as a statutory contempt power to supplement bankruptcy courts' inherent contempt power and to provide a remedy to those injured by creditors' violations of the discharge injunction.  *Hardy*, 97 F.3d at 1389-90. Unfortunately, case law surrounding liability and damages in this context has developed quite unevenly, with some legal norms borrowed from the § 362 jurisprudence and some from the traditional contempt jurisprudence.

For these reasons, Green Tree's argument does not convince the court that an order imposing a fixed monetary sanction intended to coerce a creditor to improve its computer system so as not to commit any more violations of the discharge injunction is impermissible.  If Green Tree's theory were correct, then the case law suggests two possible remedies: (1) as the $50,000 sanction is "punishment," the court could hold a jury trial for what could be considered Green Tree's criminal contempt so that it receives the necessary due process before the imposition of the sanction, or (2) the court could remand the case so the

16

Bankruptcy Court could remedy its order by issuing a technically coercive sanction in the civil contempt tradition.  For example, under its § 105 authority the Bankruptcy Court could order Green Tree to improve its computer system so as not to commit any more violations of the discharge injunction and, in this order, subject Green Tree to a per diem monetary sanction until Green Tree chooses to comply with that order.  Naturally, Green Tree did not suggest either one of these remedies.  Instead, Green Tree contends that it already purged its contempt simply by withdrawing its proof of claim and should not be subject to any sanctions—a proposition the court rejects, not least because it lacks even persuasive authority as applied to the facts of this case.  The court concludes that § 105 authorizes the bankruptcy court to order the $50,000 sanction as a coercive sanction.  *See Jove Eng'g*, 92 F.3d at 1554 (finding that § 105 authorizes the court to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code). The court further affirms the sanction as necessary or appropriate to encourage future compliance with the Bankruptcy Court's orders, especially discharge injunctions.

### b.     Punitive sanctions

Assuming *arguendo* that the Bankruptcy Court was not authorized by § 105 to impose the $50,000 "coercive" sanction, the question for the court becomes whether the Bankruptcy Court was authorized to impose a $50,000 "punitive" sanction.  Despite Green Tree's claim to the contrary, the Eleventh Circuit's

interpretation of § 105's plain language in *Jove Engineering* made clear that the Bankruptcy Court may issue *any* order—injunctive, compensatory, or punitive—so long as it is necessary or appropriate to carry out the provisions of the bankruptcy code. *Jove Eng'g*, 92 F.3d at 1554; *see also Nibbelink v. Wells Fargo Bank (In re Nibbelink)*, 403 B.R. 113, 121 (Bankr. M.D. Fla. 2009). The Bankruptcy Court's statutory power to issue punitive sanctions has been limited only in the context of a waiver of sovereign immunity. *See Jove Eng'g*, 92 F.3d at 1554; *Nibbelink*, 403 B.R. at 121; *McTyeire v. Hunt (In re McTyeire)*, 357 B.R. 898, 904 (Bankr. M.D. Ga. 2006); *In the Matter of Arnold*, 206 B.R. 560, 568 (Bankr. N.D. Ala. 1997). Therefore, an order awarding punitive damages for a violation of the discharge injunction is not per se impermissible under § 105.

In determining whether punitive sanctions are necessary or appropriate for violations of the discharge injunction, many bankruptcy courts have adopted the standard used for violations of the automatic stay:

> [P]unitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so.

*Keen v. Premium Asset Recovery Corp. (In re Keen)*, 301 B.R. 749, 755 (Bankr. S.D. Fla. 2008) (*quoting In re Wagner*, 74 B.R. 898 (Bankr. E.D. Pa. 1987)

(quotation marks omitted).  Five factors guide the bankruptcy court's discretion in awarding punitive damages: "(1) the nature of the defendant's conduct; (2) the nature and extent of the harm to plaintiff[;] (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor."  *Id*. (citations omitted).

After weighing these factors, the court concludes that, although Green Tree did not intend to violate the discharge injunction, Green Tree's conduct rises to the level of reckless disregard.  Green Tree's representative testified at the hearing that Green Tree was unable to "read" the discharge notation in the McLean's file, despite the sophistication of their computer systems.  This fact, especially considering Green Tree had not repaired its alleged computer problems in the time period between its violation of the discharge injunction and the trial in this matter, is sufficient to find that Green Tree operated with reckless disregard of the injunction, of the McLeans, and possibly of other debtors with discharged debts. In operating its debt collection software, Green Tree would not have known if it was committing other violations. The discharge injunction is critical to the debtors' fresh start, and violations thereof frustrate the goals of the bankruptcy code.  *See Hardy*, 97 F.3d at 1389.  Creditors have an obligation to maintain procedures that will not violate the provisions of the bankruptcy code, particularly the discharge injunction. *See Faust v. Texaco Ref. & Mktg. Inc. (Matter of Faust)*, 270 B.R. 310,

317 (citation omitted); *Roche v. Pep Boys, Inc. (Matter of Roche)*, 361 B.R. 615, 623 (Bankr. N.D. Ga. 2005).   Before changing its software, Green Tree was obligated to confirm that the file notations regarding discharges made in previous versions of the software would be translatable and readable.   By failing to do so, Green Tree's conduct evidences a reckless disregard of the risk of violating the discharge injunction.

On balance, the remaining factors weigh in favor of punitive damages. There are no facts that support a conclusion that Green Tree had an evil motive to harm the McLeans.   Yet, the extent of the harm to the McLeans is considerable, and there is no evidence of their provocation.   The parties do not discuss, and the bankruptcy court did not make any findings as to, Green Tree's financial situation. Thus, this factor is not considered in the court's determination.

For all of these reasons, the court concludes that the $50,000 punitive sanction is necessary or appropriate to redress Green Tree's reckless disregard of the discharge injunction and the consequent harm its debt collection procedures cause. The amount of the sanction is not excessive, as it is merely double the amount of actual damages. *See generally Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008).

Regardless of its label, the purpose of the sanction is the same.   If it is coercive, then the sanction should coerce Green Tree into compliance.   If it is

punitive, then the sanction should deter Green Tree from committing future violations.

## C.   __Remaining Issues__

For the first time on appeal, Green Tree objects to the award of attorney's fees and questions whether Greenpoint Credit is a proper defendant. The court refuses to consider issues not presented to the Bankruptcy Court and raised for the first time on appeal to the district court. *See In re World Wide Systems, Inc*., 328 F.3d 1291, 1301 (11th Cir. 2003).

## V.  CONCLUSION

Based upon the foregoing, the order of the Bankruptcy Court is AFFIRMED.

DONE this 25th day of August, 2014.

_____
/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE
